UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ALISA MEYER,                    :         NO. 1:06-CV-00453
                                :
        Plaintiff,             :
                                :
    v.                          :         **OPINION AND ORDER**
                                :
MAXIM HEALTHCARE SERVICES,       :
INC.,                           :
                                :
        Defendant.             :

         This matter is before the Court on Defendant's Motion for
Summary Judgment (doc. 22), Plaintiff's Memorandum in Opposition
(doc. 23), and Defendant's Reply (doc. 24). For the reasons
indicated herein, the Court GRANTS IN PART AND DENIES IN PART
Defendant's Motion for Summary Judgment.

**I. Background**

         Defendant Maxim Healthcare Services, Inc. ("Maxim") is a
provider of home health care services (doc. 22). Plaintiff Alisa
Meyer ("Meyer"), a registered nurse, began working as a Clinical
Supervisor in Maxim's Cincinnati office on August 30, 2004 (Id.).
Approximately three months later, in December 2004, Plaintiff
announced to her supervisor, Mark Neumeyer ("Neumeyer"), that she
was pregnant (Id.).

         On April 26, 2005, Plaintiff submitted an application for
leave under Defendant's leave policy (Id.). Under such policy,
which comports to the requirements of the Family and Medical Leave
Act,("FMLA"), 29 U.S.C. § 2001 et seq., before qualifying for

leave, employees must accumulate 1) at least 1250 hours and 2) twelve months of work (Id.). Plaintiff did not fulfill either of these requirements (Id.). Defendant's benefits department rejected Plaintiff's application for leave by letter on May 24, 2005, indicating it was denying her request because she was ineligible for leave (Id.). The letter also stated:

> Since you are not eligible for leave and are currently not working the required hours to maintain your Group Insurance benefits, your employment with Maxim has been terminated effective 07-11-2005 which is the last day you worked...

(Id.). Despite the language in the letter, Plaintiff was working the required number of hours to maintain her group insurance benefits when she received the letter on May 25, 2005, and continued to do so until July 8, 2005 (Id.).

Plaintiff immediately went to Neumeyer who agreed to check into why the letter was sent (Id.). Neumeyer told Plaintiff that Defendant had terminated her employment so she would be eligible for COBRA benefits (doc. 23). Neumeyer also informed Plaintiff that she would be able to return to work at the end of her maternity leave (Id.).

Plaintiff contends that she asked Neumeyer to put the promise of reinstatement in writing (Id.). Despite allegedly agreeing to comply with Plaintiff's request, Neumeyer failed to deliver any written documentation to assure Plaintiff she would have her job at the end of her maternity leave (Id.). According to

2

Plaintiff, as the only written documentation she could obtain from her employer indicated she was terminated, she concluded that her employment was, in fact, terminated (Id.). Plaintiff retained an attorney who contacted Defendant by letter on June 21, 2005, alleging that Defendant's termination of Plaintiff violated state and federal pregnancy discrimination laws (Id.). Defendant did not respond to the letter, nor did it respond to Plaintiff's attorney's follow up-letters of July 6 or July 22, 2005 (Id.). According to Defendant, Plaintiff's counsel's June 21 letter can fairly be characterized as seeking, among other things, a lump sum payment to Plaintiff in an amount equal to her salary from July 11, 2005, until April 31, 2006, and COBRA payments from July 11, 2005, through December 31, 2006, or until Plaintiff retained comparable health coverage from a new employer (doc. 24). In Defendant's view, after Plaintiff retained counsel, she never requested reinstatement or a written promise of reinstatement (Id.).

Defendant further maintains that it did not terminate Plaintiff's employment and that its May 24, 2005 letter was a mistake (doc. 22). Defendant contends Plaintiff made the decision not to come back to work and voluntarily terminated her own employment on July 8, 2005, the same date she had planned to begin her leave (Id.). According to Defendant, Plaintiff never made attempts after the birth of her child to continue her employment, despite the facts that Defendant had no clinical supervisors after

Plaintiff's separation from employment and Defendant wanted her to return to work (Id.).

On August 24, 2005, Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") (doc. 2). The EEOC dismissed Plaintiff's charge, but, on or about March 15, 2006, issued its notice of right to sue letter to Plaintiff (Id.). Plaintiff filed her Complaint on July 12, 2006, bringing two causes of action for pregnancy discrimination and retaliation, one under O.R.C. § 4112 and the other under Title VII of the Civil Rights Act of 1964, as amended, as well as a third cause of action for wrongful discharge as a breach of Ohio public policy (Id.). On May 1, 2007, Defendant filed the instant motion for summary judgment on all counts (doc. 22).

## II. Analysis

### A. Summary Judgment Standard

Although a grant of summary judgment is not a substitute for trial, it is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56; see also, e.g., Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464 (1962); LaPointe v. United Autoworkers Local 600, 8 F.3d 376, 378 (6th Cir.

1993); Osborn v. Ashland County Bd. of Alcohol, Drug Addiction and Mental Health Servs., 979 F.2d 1131, 1133 (6th Cir. 1992) (per curiam). In reviewing the instant motion, "this Court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Patton v. Bearden, 8 F.3d 343, 346 (6th Cir. 1993), quoting in part Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986) (internal quotation marks omitted).

The process of moving for and evaluating a motion for summary judgment and the respective burdens it imposes upon the movant and the non-movant are well settled. First, "a party seeking summary judgment ... bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact [.]" Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see also LaPointe, 8 F.3d at 378; Guarino v. Brookfield Township Trustees, 980 F.2d 399, 405 (6th Cir. 1992); Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989). The movant may do so by merely identifying that the non-moving party lacks evidence to support an essential element of its case. See Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A., 12 F.3d 1382, 1389 (6th Cir. 1993).

Faced with such a motion, the non-movant, after completion of sufficient discovery, must submit evidence in support of any material element of a claim or defense at issue in the motion on which it would bear the burden of proof at trial, even if the moving party has not submitted evidence to negate the existence of that material fact. See Celotex, 477 U.S. at 317; Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). As the "requirement [of the Rule] is that there be no genuine issue of material fact," an "alleged factual dispute between the parties" as to some ancillary matter "will not defeat an otherwise properly supported motion for summary judgment." Anderson, 477 U.S. at 247-248 (emphasis added); see generally Booker v. Brown & Williamson Tobacco Co., Inc., 879 F.2d 1304, 1310 (6th Cir. 1989). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 252; see also Gregory v. Hunt, 24 F.3d 781, 784 (6th Cir. 1994). Accordingly, the non-movant must present "significant probative evidence" demonstrating that "there is [more than] some metaphysical doubt as to the material facts" to survive summary judgment and proceed to trial on the merits. Moore v. Philip Morris Cos., Inc., 8 F.3d 335, 339-340 (6th Cir. 1993); see also Celotex, 477 U.S. at 324; Guarino, 980 F.2d at 405.

Although the non-movant need not cite specific page

numbers of the record in support of its claims or defenses, "the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the non-moving party relies." Guarino, 980 F.2d at 405, quoting Inter-Royal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989) (internal quotation marks omitted). In contrast, mere conclusory allegations are patently insufficient to defeat a motion for summary judgment. See McDonald v. Union Camp Corp., 898 F.2d 1155, 1162 (6th Cir. 1990). The Court must view all submitted evidence, facts, and reasonable inferences in a light most favorable to the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); United States v. Diebold, Inc., 369 U.S. 654 (1962). Furthermore, the district court may not weigh evidence or assess the credibility of witnesses in deciding the motion. See Adams v. Metiva, 31 F.3d 375, 378 (6th Cir. 1994).

Ultimately, the movant bears the burden of demonstrating that no material facts are in dispute. See Matsushita, 475 U.S. at 587. The fact that the non-moving party fails to respond to the motion does not lessen the burden on either the moving party or the Court to demonstrate that summary judgment is appropriate. See Guarino, 980 F.2d at 410; Carver v. Bunch, 946 F.2d 451, 454-455 (6th Cir. 1991).

7

**B.  Pregnancy Discrimination**

Plaintiff brings her pregnancy discrimination Complaint pursuant to Title VII and Ohio Revised Code Chapter 4112.[1]  Under these provisions, plaintiffs may assert a prima facie case of pregnancy discrimination through the presentation of either direct or indirect evidence.  Allen v. Ethicon,Inc., 919 F. Supp. 1093, 1098 (S.D. Ohio 1996), Ensley-Gaines v. Runyon, 100 F.3d 1220, 1224 (6th Cir. 1990).  Because evidence of direct discrimination can be difficult to produce, the law allows for a plaintiff to raise an inference of discrimination through circumstantial evidence.  McDonnell Douglas v. Green, 411 U.S. 792 (1973).  The prima facie case "raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors."  Furnco Construction Corp. v. Waters, 438 U.S. 567, 577 (1978).  Establishment of the prima facie case in effect creates a presumption that the employer unlawfully discriminated against the employee.  Texas Dep't. Of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981).  The burden shifts to defendant, therefore, to rebut the presumption of discrimination by producing evidence that

---

[1] Under 42 U.S.C. § 2000e(k), the Pregnancy Discrimination Act, discrimination is prohibited on the basis of pregnancy, childbirth, or related medical conditions.  Pregnancy discrimination claims under Ohio Rev. Code § 4112.01 et seq. are analyzed pursuant to federal case law involving 42 U.S.C. § 2000e.  Soreo-Yasher v. First Office Mgmt., 926 F. Supp. 646, 649 (N.D. Ohio 1996).

the plaintiff was terminated, or someone else was preferred, for a legitimate, nondiscriminatory reason. Id. If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the burden shifts again to plaintiff to demonstrate that defendant's proffered reason is a pretext for unlawful discrimination. She may succeed in this by showing both that defendant's proffered reason(s) are factually untrue, and that discrimination was the real reason for the adverse employment action. Peters v. Lincoln Electric Co., 285 F.3d 456, 470 (6th Cir. 2002), St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). Plaintiff can prove pretext by showing that 1) the articulated reasons are not supported by the facts as revealed by the evidence; 2) the articulated reason or reasons did not actually motivate the termination; or 3) the articulated reasons were insufficient to warrant the termination. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir. 1994).

In this case, Plaintiff has not asserted direct evidence of discrimination, so in order to make out her prima facie case, she must establish that (1) she was pregnant; (2) she was qualified for her job; (3) she suffered an adverse employment action; and (4) there was a nexus between her pregnancy and the adverse employment decision. Tysinger v. Police Dept. Of the City of Zanesville, 463 F.3d 569, 574 (6th Cir. 2006), Boyd v. Harding Academy, 88 F.3d 569, 574 (6th Cir. 1996), Davidson v. Franciscan Health System of the

9

Ohio Valley, Inc., 82 F.Supp.2d 768, 774 (S.D. Ohio 2000). One method to demonstrate the fourth prong is to show that similarly situated non-pregnant employees were treated differently from Plaintiff. Tysinger, 463 F.3d at 573-74.

### 1. Defendant Argues Plaintiff's Pregnancy Discrimination Case Fails

Defendant does not contest that Plaintiff can meet the first two prongs of her prima facie case (doc. 22). Defendant, however, argues that Plaintiff suffered neither any adverse employment action nor has shown that any nonpregnant employees were treated more favorably.

According to Defendant, in Smith v. City of Salem, Ohio, 378 F.3d 566, 575-76 (6th Cir. 2004) the Sixth Circuit defined an adverse employment action as a materially adverse change in the terms and conditions of plaintiff's employment, such as a firing, a failure to promote, or a material loss of benefits (Id.). Defendant argues that in this case, Plaintiff was not fired and, therefore, did not suffer an adverse employment action (Id.). Citing Keeton v. Flying J, Inc., 429 F.3d 259, 263 (6th Cir. 2005), Defendant claims that a reasonable jury could not find a termination decision lasting only hours to constitute an adverse employment action (Id.). Based on Keeton, Defendant argues that Plaintiff suffered no adverse employment action because Neumeyer's verbal assurances, which Plaintiff received within one day of her termination letter, rendered the termination decision only brief in

10

nature (Id.).

Defendant next argues that Plaintiff fails to establish the fourth element of a prima facie case because she cannot demonstrate that another employee who was similar in his or her ability or inability to work received benefits that were denied to Plaintiff (Id.). Citing Tysinger, 463 F.3d 569, 574 (6th Cir. 2006), Defendant contends the Pregnancy Discrimination Act does not require preferential treatment for pregnant employees, but instead mandates that employers treat pregnant employees the same as nonpregnant employees who are similarly situated with respect to their ability to work (Id.). Defendant argues it denied Plaintiff leave because she did not meet the requisite 1250 hours and 12 months work experience (Id.). Every one of Defendant's employees who applies for leave, it argues, whether for pregnancy or some other disability, and who does not satisfy the requisite hours and months of work experience, receives the same letter from Defendant (Id.). Defendant thereby concludes that its policy was pregnancy blind (Id.). As such, it concludes, Plaintiff cannot establish that any similarly-situated employee received benefits that were denied to Plaintiff, and cannot establish the fourth element of her prima facie case (Id.).

### 2. Plaintiff Responds Arguing Her Pregnancy Case is Viable

Plaintiff argues first that there is sufficient evidence in the record for a jury to find that she suffered an adverse

11

employment action (doc. 23).  Plaintiff challenges Defendant's assertion that the May 24, 2005 termination letter was immediately rescinded, claiming that she repeatedly asked for a commitment in writing that her job would be secure at the end of her maternity leave but that Defendant never provided it (Id.).  Plaintiff argues that Neumeyer himself admitted Plaintiff's termination was involuntary and that Defendant's refusal to provide a written commitment was "curious" (Id.).  Based on this, Plaintiff concludes that sufficient evidence exists in the record to convince a jury that she did not voluntarily resign, but that Defendant terminated her employment (Id.).

Regarding the final element of the prima facie case, Plaintiff argues that Defendant has not contested that she could prove a causal connection between her pregnancy and the adverse employment action (Id.).  As such, Plaintiff contends the Court need not consider Defendant's argument based on the theory that Plaintiff is unable to establish that she was treated less favorably than a similarly situated, nonpregnant employee (Id.). Nevertheless, Plaintiff argues that should the Court require her to carry such burden, Defendant's own briefing belies such a theory (Id.).  Plaintiff argues that Gail Ridgely, Defendant's former benefits manager, testified that it was her understanding that employees were welcome to continue working after being determined ineligible for leave (Id.).  Plaintiff claims Defendant treated her

inconsistently with such policy, as the May 24, 2005 letter allegedly made it clear she was not welcome to continue working after her leave of absence (Id.). Plaintiff further signals that when Neumeyer was deposed about whether management's handling of her matter was consistent with its usual practices, he stated he, "had never seen that before," (Id.). Plaintiff concludes that a sufficient amount of evidence exists to create a genuine issue of material fact as to disparate treatment, making it possible for her to establish all four elements of her <u>prima facie</u> case of discrimination (Id.).[2]

### 3. **Plaintiff Has Established a <u>Prima Facie</u> Case**

The Court finds that Plaintiff has adequately established a <u>prima facie</u> case for pregnancy discrimination. A reasonable jury could find that the May 24, 2005 letter signaled her termination, and that Defendant failed to offer sufficient assurances that it was inapplicable. While there may be no requirement under federal law that Defendant provide Plaintiff with written confirmation under such circumstances, a reasonable jury could still find that where an employee repeatedly requests such written confirmation and

---

[2] Plaintiff further invokes O.A.C. 4112-5-05(G)(2), which appears to require employers to provide leave for pregnancy even where insufficient or no leave is available. Defendant proffers evidence that the Ohio Civil Rights Commission has proposed to amend the rule. Although the rule remains unamended as of present, the Court need not rely on such rule to arrive at its conclusion, because Plaintiff meets her <u>prima facie</u> case of discrimination.

never receives it, she could reasonably conclude the written notice she received indicating termination was final.

A jury could further find that Plaintiff's termination was causally linked to her pregnancy, because clearly she requested leave due to her pregnancy, and such request resulted in the termination letter. <u>Boyd</u>, 88 F.3d 569, 574. Even under Defendant's alternate theory, under which Plaintiff would be required to prove that similarly-situated non-pregnant employees were treated more favorably, Plaintiff has proffered evidence that Neumeyer had never seen such an outcome before, and Ridgely's testimony that company policy was to welcome employees back even if they had not accrued the requisite time to qualify for leave. This evidence is sufficient such that a jury could conclude Defendant had an informal policy of allowing employees back to work who had not qualified for leave under their official policy, and that it treated Plaintiff differently. Although Defendant argues that it sent the same boilerplate termination letter to all employees who did not qualify for leave, a jury could find that Defendant's course of conduct in relation to other employees in fact differed from that in relation to Plaintiff. Under Defendant's policy, others stayed employed, while Plaintiff did not. It is a close call here, but taking all factual inferences in favor of Plaintiff, as the Court is required to do in the context of a motion for summary judgment, the Court concludes that even under the

14

alternative fourth prong, Plaintiff meets her _prima_ _facie_ case.

### 4. Defendant's Proffered Legitimate Non-Discriminatory Reason for Denying Plaintiff Leave

Having determined that Plaintiff has established a _prima facie_ case of pregnancy discrimination, the burden shifts to Defendant to proffer a legitimate nondiscriminatory justification for its action. _Reeves_, 446 F.3d 637, 641. Defendant argues its legitimate reason for denying Plaintiff's leave request was that Plaintiff did not qualify under its policy, which comports with the FMLA. The Court has already determined that a factual question exists as to whether Defendant had a parallel informal policy under which it treated Plaintiff differently from other similarly-situated non-pregnant employees whom Defendant allowed to return to work. If under such informal policy Plaintiff was indeed welcome to return to work, as Defendant also appears to argue, then it defies logic as to why Defendant could not manage to make its position clear to Plaintiff subsequent to Plaintiff's repeated requests. Plaintiff has therefore met her burden of showing that Defendant's articulated reason could reasonably be viewed as unsupported by the facts as revealed by the evidence. Of course a jury, after evaluating the evidence and the witnesses, could conclude differently, but Plaintiff has proffered adequate evidence such that a jury could find Defendant's proffered legitimate reason for its actions is merely pretext. For these reasons, the Court finds it appropriate to deny Defendant's summary judgment motion as

to Plaintiff's pregnancy discrimination claims pursuant to Title VII and Ohio Revised Code Chapter 4112.

**C. Retaliation**

Similarly to her pregnancy discrimination claim, Plaintiff brings her retaliation claim pursuant to Title VII and O.R.C. §4112.[3]  In order to establish a prima facie case for retaliation under Title VII of the Civil Rights Act, a plaintiff must establish: 1) she took part in activity protected by Title VII, 2) that she was subject to adverse employment action, and 3) there is a causal connection between the protected activity and the adverse employment action.  White v. Burlington Northern & Santa Fe R. Co., (6th Cir. 2004) (citing Jackson v. RKO Bottlers of Toledo Inc., (6th Cir. 1984)).

Plaintiff premises her retaliation claim on the theory that after she opposed Defendant's alleged discriminatory refusal of leave, and hired legal counsel to assist her with her pregnancy discrimination claim, Defendant fired her.  Defendant attacks Plaintiff's retaliation claim in much the same way it attacked her pregnancy discrimination claim: it argues she suffered no adverse employment action and therefore opposed no illegal practice, and it argues the facts just do not support such a claim (doc. 22).

---

[3] Ohio Courts analyzing retaliatory discharge claims brought under the Ohio Revised Code, rely on federal case law applicable to Title VII.  Carrasco v. NOAMTC Inc., 124 Fed. Appx. 297 (citing Genaro v. Cent Transport, Inc., 84 Ohio St.3d 293 (Ohio 1999).

Defendant contends that to the extent Plaintiff premises her retaliation claim upon the letter sent by her counsel, such letter was sent _after_ Plaintiff had already received her alleged termination letter, been promised her job back by Neumeyer, and continued to work for several weeks (_Id._).  Moreover, Defendant argues, since Plaintiff did not ask for her job back in any of the letters from her attorney and because her deposition testimony reflects that she had made up her mind not to return to work before she even sent the letter, Defendant argues no evidence exists of any form of retaliation.

Plaintiff responds by arguing that, even if her employment was not in jeopardy at the time her counsel contacted Defendant on June 21, 2005, it certainly was afterwards; her employment was terminated, on July 8, 2005, shortly after her attorney sent the letter (_Id._).  This temporal proximity, Plaintiff contends, is enough to create a genuine issue of material fact regarding whether a causal connection existed between her protected activity and her subsequent termination (_Id._).  Plaintiff therefore asserts that she has established a _prima facie_ case for retaliation and, for the same reasons argued in her analysis of the discrimination claim, Defendant has failed to articulate a legitimate, nondiscriminatory reason for its actions that cannot be considered pretextual (_Id._).  Accordingly, she maintains the Court should deny Defendant summary judgment on her retaliation claim

17

(Id.).

Having reviewed this matter, the Court finds Plaintiff's position well-taken.  As explained above, a jury could find evidence in the record that Defendant had an informal policy of allowing employees who did not qualify for leave to return to work after being gone.  A jury could further find that Plaintiff was not afforded such opportunity after she retained counsel to assert her rights as a pregnant person.  A jury could conclude that after Defendant knew Plaintiff hired an attorney, it simply stopped communicating—-failing to respond to counsel's follow-up letter, and ultimately allowing Plaintiff's employment to end on July 8, 2005.  Although Defendant attempts to characterize Plaintiff's attorney's letter as simply asking for money, a fair reading of the letter is that Plaintiff viewed her employment as involuntarily terminated and proposed one method to address the problem.  A jury could find that Defendant very well could have responded, indicating by letter that Plaintiff was welcome to return to work, if indeed this was its policy.  As Defendant failed to do so, a jury could make the inference that it refused to do so in retaliation for Plaintiff's having engaged a lawyer to advocate on her behalf.

The Court does not find persuasive Defendant's argument concerning Plaintiff's state of mind or intention to leave.  Even should it be the case that Plaintiff, out of frustration, gave up

18

on Maxim—this does not change the fact that she can meet the prima facie case for retaliation. Defendant knew it had an unhappy employee to whom it had denied leave. Defendant knew she had hired an attorney. Only days later Defendant allowed Plaintiff's termination to take effect. Defendant's actions and inactions can be viewed to add up to retaliation, regardless of Plaintiff's state of mind.

Defendant proffered the same legitimate nondiscriminatory justifications in relation to Plaintiff's retaliation claim that it offered in relation to her pregnancy discrimination claim. The Court's analysis above, therefore, applies equally. Accordingly, the Court denies Defendant's motion for summary judgment as to Plaintiff's retaliation claim.

### D. Wrongful Discharge–Breach of Ohio Public Policy

Plaintiff styles her third cause of action as wrongful discharge in breach of Ohio public policy. The Court need not reach the minutiae of the parties' arguments as to this claim, as it finds Plaintiff's Ohio public policy claim controlled by the holding in Carrasco v. NOAMTC, Inc., in which the Sixth Circuit found that Title VII and Ohio Rev. Code § 4112 provide adequate remedies to vindicate Ohio's public policies against unlawful employment discrimination, and therefore such claims are precluded under Ohio law. 124 Fed. Appx. 297, 304 (6th Cir. 2004) (interpreting the Ohio Supreme Court's ruling in Wiles v. Medina

19

<u>Auto Parts</u>, 96 Ohio St. 3d 240, 773 N.E.2d 526, 530 (2002)(citations omitted) to bar public policy claims where there exists a statutory remedy that adequately protects society's interests), <u>see also</u> <u>James v. ABX Air, Inc.</u>, 2006 U.S. Dist. LEXIS 16979, No. 1:03-CV-00480, at *10, (S.D. Ohio, March 23, 2006)(Spiegel, J.), <u>Stang v. Deloitte & Touche</u>, Case No. 2:05-CV-590, 2006 U.S. Dist. LEXIS 16444, * 9 (S.D. Ohio, April 5, 2006). Moreover, the Ohio Supreme Court very recently found where statutory remedies existed for age discrimination, a common-law tort for wrongful discharge based on Ohio's public policy age discrimination does not exist, because the remedies in O.R.C. 4112 provide complete relief. <u>Leininger v. Pioneer National Latex</u>, No. 2006-1304, 2007 Ohio LEXIS 2229, **2 (Ohio, September 27, 2007)[4]. The same principles preclude Plaintiff's public policy claim in this case. Accordingly, the Court finds it appropriate to grant Defendant summary judgment on Plaintiff's Ohio public policy claim.

**III. CONCLUSION**

This is the quintessential case of a breakdown in communication resulting in a lawsuit that attorneys very well could

---

[4] Although the Court must follow the majority holding, it notes Justice Pfeifer's insightful dissent, in which he argued that he did not believe "the common law should be inextricably tied to the nuances and vagaries of Ohio's statutory scheme. The common law has its own life." <u>Leininger</u>, at ** 22. Pfiefer concluded, "The fact that statutory law may have caught up with the common law as far as remedies are concerned does not mean that the common-law cause of action...disappears." <u>Id.</u> at **25.

have avoided.   Indeed, the poor communication on the part of Defendant gives rise to genuine issues of fact as to Plaintiff's state and federal pregnancy discrimination and retaliation claims that only a jury can decide.   However, as indicated herein, Defendant prevails on Plaintiff's public policy claims, as the Court concludes that such claims are barred by the fact that Plaintiff has adequate alternative remedies under Title VII and statutory law.

Accordingly, the Court DENIES IN PART Defendant's Motion for Summary Judgment (doc. 22) as to Plaintiff's state and federal law pregnancy discrimination and retaliation claims in Counts One and Two of the Complaint, BUT GRANTS IN PART such motion (<u>Id</u>.) as to Plaintiff's wrongful termination claim based on Ohio public policy in Count Three of the Complaint.   The Court further notes that previous final pretrial and trial dates did not proceed due to the pendency of this motion.   The Court now RESETS this matter for final pretrial conference at 2:30 P.M. on November 15, 2007, and for the three-day jury trial, on December 11, 2007.

SO ORDERED.


Dated: October 10, 2007   <u>/s/ S. Arthur Spiegel</u>
                          S. Arthur Spiegel
                          United States Senior District Judge